We'll now call the next case on the calendar, 20-30-31 and 30-94, Michele Collella v. The Republic of Argentina. We have Mr. Meyer for the appellants, and Mr. Meyer, I understand you'd like to reserve one minute for rebuttal, is that right? Yes, Your Honor. As this is a consolidated matter, I was curious if I could get another two minutes just to make sure. Nope. Good try, though. Thank you. Thank you for asking rather than presuming. But no, you have nine minutes and then you'll have another one. And if we keep you over with our questions, that's on us. All right. To your court. Thank you. Good morning, Your Honors. May it please the Court. The District Court errantly levied a punitive sanction of nearly $9 million by vacating appellants' judgments and dismissing the matters of prejudice on five distinct grounds. One, the District Court— I'm going to jump in there. Sure. We don't really even know how much is $9 million. Your client may not even have these bonds. Well, Your Honor, both the District— Right. Well, there are two sets of bonds, the Colella bonds and the Ruggiero bonds. There's no dispute that the Ruggiero bonds are lawfully and properly held by my client. And there's no dispute that they were the same bonds involved in the Fort Joni case, right? No, Your Honor. They're completely different bonds. The Ruggiero ones were not the same bonds that were at issue seeking double recovery in the Fort Joni case? I believe those are the Colella bonds, Your Honor. Those are the Colella bonds, right, which are the bonds in dispute. But there is no dispute about— Well, on the face of the bonds in the Ruggiero case, they're okay. When you say there's no dispute about it, I think that's too strong. We are not—before us today, we have no reason to say that the fraud which may have been committed with respect to Colella and Fort Joni was committed with respect to the Ruggiero. Correct, Your Honor. Okay. There's no occasion—I mean, both the Republic conceded that the Ruggiero bonds are bonafide, as did the district court. You're going too strong that they are on their face potentially valid. To say that that means that they are valid is a stronger statement. Stick with what you've got. Sure, Your Honor. Although, can I just clarify? And, again, I'm going to apologize. I mean, it would not be unsurprising that I just have my facts wrong. But I thought that the claim was that it was the Banca Carrige documents that were doctored in the Fort Joni case. Am I wrong? I thought the Fort Joni case was the allegation is that those were doctored versions of the Ruggiero bonds. I don't think they were the Colella bonds. Am I getting that wrong? If I am, I apologize. Your Honor, I may be mistaken about that fact. Because that's a big fact. I thought the premise was that we have sort of a flip version of the First Circuit's version of Aoud, where you had somebody lying, you know, presenting fabricated documents, you know, in a first case, committing fraud to recover. They get caught, and they say, oh, guess what? Here are our clean case. Here are the clean documents. And the court is saying, no, no, no, no, no. You don't get a second bite at the apple here. This is effectively the same litigation, and if you commit fraud in part of it, you're out of luck and punished for the whole thing. This is a little bit of a twist on Aoud, where you've got the same documents, one potentially in the Ruggiero case clean, but then they're completely doctored up versions of the Bancaccari J documents in the Forgione case, and the district court, as I read it, saying, you know, this is effectively an attempt at double recovery, and I don't know that she made the explicit factual finding based on Gleiser's statements to the court that this was all basically was put up by the Colella clients, but it's close enough that we're not taking any chances, and you're out the window. So I guess that's a really big factual question, and again, correct me if I'm wrong, and we're talking about the Forgione documents are doctored Colella documents. Sure. The record is what the record is. I will have to check while they're arguing. Okay. You can come back to that. If you don't know the answer to that question, we can come back to that in your rebuttal. But firstly, your Italian is excellent. Secondly, the district court five times found that there was no fraud in Ruggiero and that the Forgione matter. But the district court found that simply denying the claim, throwing it out in the Colella case, was in no way sanctioning you for the fraud in that, because that simply put you back where you were. And so to do something that actually did something to you, they charged you. They did what they did with respect to the Ruggiero because they said this is all one deal. Now, is that wrong? Should they have held a hearing before doing that to see the connection? But the notion that the district court said was we're not doing anything if we do only the first one, so we have to do all of them. Your Honor, at the time that the Forgione allegations came to light, there was not one but two hearings where Judge Brisset explicitly looked at the evidence and explicitly said Colella has done nothing wrong. Well, that's years earlier, right? 2011, Your Honor. Is this a – are we reviewing a decision by Judge Brisset? No, but – We're reviewing a decision by a different district judge years later with a lot more evidence, right? Sure, sure. And Judge Brisset – Poor Judge Brisset was driven to his death by the Argentina boss. Well, you can blame these guys over here. What I'm saying is – Your – with respect to the point about the Ruggiero bonds, even assuming they were not fraudulent, they were still being submitted by Colella and Dussault, right? They were being submitted. Right, but in other words, if Colella and Dussault engaged in fraud with respect to the Colella bonds, why should they be able to rely on other bonds if – I mean, they're still defrauding the Court. Sure. First of all, let me go back to the law of the case point. Judge Brisset found twice – Okay. Law of the case is not binding, right? We all know that, right? Law of the case – Collateral stop all that. Can be changed, right? Law of the case means we decide something. We have any number of discretionary reasons we can overrule ourselves. So even assuming that's preserved, that doesn't matter, right? It's not like there was a mandate from us that the district court is disobeying, right? No. That's a discretionary, loose rule. Not very helpful. One second. I'm sorry. Collateral stop. No, no. Sure. I just don't want to lose – All those things are a waste of your time and our time. The only argument you have is that in doing what the district court did with respect to the Regera bonds, it was acting too harshly in a punitive way, by way of sanctioning, without taking the steps that are necessary for a punitive action. That that may not have been necessary in Fallella because all it was doing was wiping out a fraud, but that with respect to the Regera bonds, it should have done more because that was sanctioning and that was punitive. That's your only argument. The rest is nonsense, so stick to that. Fair enough, Your Honor. So let's stick to that. There is gross constitutional due process deprivations in still finding fraud on the court. There was no cross-examination afforded. Is it your position that there was no fraud at all? I, Your Honor, came on on the appeal. I understand that, but you're here on the appeal. You're trying to push your client's claims. And what I'm asking is do you have a good faith basis for believing that the claims are legitimate in light of all this evidence that the bonds were fabricated, at least some of them? Yes, Your Honor. The record, the actual evidence that was submitted doesn't say that the bonds were fabricated. The bank statements were fabricated? Is that the line you're drawing? It does not say that, Your Honor. It does not say that the bank statements were fabricated. It says that, in fact, they held the bonds through 2008. So why would they submit fake bank statements? The bank statements are, I mean, they're laughably poorly fabricated. So I guess the question is why would – if they really owned the bonds, why are they cooking up fake evidence? Nobody does that. The inference is pretty overpowering. I mean most of the time if you're a legitimate litigant who has a legitimate claim, you don't then just go around fabricating evidence. You just have your evidence. And even if you are legitimate and you say, well, I don't know, my house burned down with all the evidence in it. I guess I'll fabricate a whole bunch of evidence and send it in. Well, that's equally a fraud on the court, right? Even if you have a legitimate claim, you're not allowed to sort of bolster your claim with obviously fabricated evidence. Well, Your Honor, the fact of whether it was fabricated or not is not conclusively found. There was an affidavit that accused – Well, it was conclusively found by the district judge, right? Sure. It was not subject – the claims were not subject to cross-examination. Okay. I think we have your claim. You've held a minute for rebuttal. Sure. So we'll let you come back. Sure. Thank you. Why don't we hear from opposing counsel on this? May it please the Court. Rahul Mukhi from Cleary Gottlieb's in Hamilton on behalf of the Republic of Argentina. Let me start. Judge Nardini, you are absolutely correct that the fraud infected the Ruggiero case as well. It was the Ruggiero account statements that were doctored and then resubmitted in Forgione. These are both the Banca Carice statements, right? Correct. So it relates to that, not to the Colella. That is absolutely correct. The district court went through this in detail at STA 91. Please talk into the microphone. You're moving – I apologize. You're moving to the other side. Yeah. If you center yourself a little bit more, that would help. Go a little lower, too. Mr. Meyer may be a little taller than me. So the district court went through this at STA 91. She went through the Forgione case to explain what happened. Also, in the record, if you look at A421, is Mr. Forgione's declaration, and he claims it's about the $1.3 million. So can I ask you about this? And this goes towards the extent of the district court's findings. And the way I read it, the district court sort of made two key findings of fraud and then listed other circumstances that sort of corroborated. And it seemed to me that the conclusions with respect to the elusive Mr. Forgione were in the category of corroborative circumstances. So do we really have in our hands a finding of fraud on the part of Colella and Dussault with respect to the forged documents that were submitted in the Forgione case? Do we have a clear enough finding by the district court that Colella and Dussault were responsible for those and therefore should be punished for that? Your Honor, I believe so. I think there's a—at minimum, the district court observed that it is highly likely in light of what took place in 2019. And I remind the court that in 2011, Colella and Dussault's former counsel stood up before Judge Versailles and said Mr. Colella had invented Mr. Forgione and lied to the court. This is in 2011. And Judge Versailles did not make a finding. What happened in 2011, the Republic sought some discovery to see what's going on with the Colella bonds in light of what Colella's counsel was alleging in that circumstance and the surrounding circumstances. Judge Versailles said I'm not going to order formal discovery now. I'm going to have the parties work it out essentially. But let me ask you this, and I was thinking of this hypothetical. Let's say that Mr. Colella had come in here with what we were calling the Colella case, the lead case with the largest amount of bonds, and he also had a slip-and-fall case against the post office, both in federal court, both assigned to the district judge, engaged in all sorts of fraud in the Colella bond case. I don't think you would be arguing that the district court could properly also dismiss the slip-and-fall case against the post office, right? That would be a completely different circumstance. So we wouldn't be saying if you have once committed fraud in one lawsuit, we consider you permanently and in all ways a fraudulent litigant. Massachusetts used to do that in some cases. So obviously I've posited for the sake of argument a very extreme version where I can't imagine such a sanction would be legitimate. But tell us why it is that this is close enough. For example, the district court said that there's overlap between the Colella case and the Ruggiero case on page 110. What is that overlap? I'm not sure what is the overlap. Is it just a common party, that it's the Republic of Argentina? Is it a common theme? Well, they're suing for bonds. Is that enough? Yes, it's enough. Or do we need the overlap with the Forgione case? You know what I mean? You talked about the overlap between Colella and Ruggiero. I don't necessarily see the overlap between Colella and Ruggiero. I see overlap between Ruggiero and Forgione, but unless we link them to Forgione. Just map that out. Yes, Your Honor. They're all linked. Fundamentally, they both involve claims on Republic bonds of the same series, seeking judgment against the Republic. Prosecuted by the same claims. Okay. One hears that. But shouldn't, as to that, as to a link with Ruggiero, there have been a hearing? That is, they might be connected in the way you just said. But is that enough for Judge Kresge to say they're sufficiently connected so that I order something that is punitive sanction with respect to the Ruggiero bonds because of that connection without spelling out that where and how that connection played out? That, for me, is a question. There's some connection is there, but how much? And does it justify this amount of punitive? I'm puzzled by that. Yes, Your Honor. And I would point to the district court's opinion, SPA 105 through 110. She went through this very carefully and found five factors that favored dismissal in Ruggiero. And I just want to address, Your Honor, the point about whether it was punitive. In some sense, all sanctions are punitive. But what the courts have focused on when it's a non-monetary sanction, when it's fraud on the court, is deterrence and protection of the judicial system. There's no doubt ordering someone to pay money, that is punitive. But you look at, you go back to Hazel, the Supreme Court case in 1944. That was vacater of a judgment. And the concern there was integrity of the courts. That's what's going on. And we cite it in a letter earlier this week, Leibovitch. And Leibovitch said non-monetary sanctions are not subject to the reasonable doubt standard. But also, there was a monetary sanction there. And there were multiple forms of monetary sanction. And there was one where this court held it wasn't punitive because what the district court was concerned about there was deterrence and integrity of the system. And if you look at Judge Preska's opinion, particularly when she addresses Ruggiero, she's concerned about the integrity of the court. Let me ask you this. She's concerned about deterrence. So I'm looking at her opinion. She says plaintiff's disruption of their own lawsuit, the Ruggiero case, through their fraudulent actions in the Colella case supports dismissal. What does she mean by that, the plaintiff's disruption of their own lawsuit, that is the Ruggiero case? Well, look, if you look back, if Colella, as we now know, was submitting forged documents, if Colella had been honest from the beginning, I don't know where these bonds are, which apparently is the position now, these cases would have been litigated differently. They were litigated together back in 2011. In 2019— All three cases were litigated together, same counsel for all three cases? Well, I should be more precise. In 2011, when the fraud first came to light, both cases were held judgment, and the Republic was seeking information to see what was going on there. In 2019, I would also point to the fact that the new unicredit documents that were also forgeries were submitted in both cases. And these were litigated together before Judge Preska at this point. Correct. So Judge Preska is trying to simultaneously sort out the legitimacy of the unicredit documents, of the BCC documents, of the Carrie J documents, all these documents, and it's effectively being litigated as a single case. And one of the things she says is this Colella fraud is causing all these additional inquiries to be made and taking up all of my precious time and the litigants' precious time, because now I don't know what's going on with Rodriguero. We still don't know what's going on. It is very possible that that, what they claim to be the Ruggiero bond, all we really know is there's a statement that says 1.3 million of AN02 is, at that time, consistent with that bank's records. But what may very well be going on, and this report concluded that it probably is, is they're using one set of bonds, what they call the Ruggiero bonds, trying to collect in three different actions. So Ayude is definitively on point. It also, Judge Calabresi, is on point on your question about punitive. In footnote 3 there, Ayude addressed whether the sanction was mere punishment and said it was not because of the prejudice accruing to the defendant in that case, and it's virtually identical. One case has a legitimate document. The other case does not. And the court dismisses both. This court has cited Ayude with approval. But what the court also said, and Judge Pretzker focused on this, is that because the sanction was seeking to protect against the interference of the court's adjudicary function, the public interest in the integrity of the judicial system, and the centrality of the fraud to the matters at issue in the litigation, here is the ownership of the bonds, this was not mere punishment. We understand. Thank you. Thank you very much. Thank you.  And just as you start, can you confirm, I don't know if you've had time to look or not, but can you confirm whether or not you agree with your opposing counsel's representation of the record that the bank statement involved in Purgione was a version of the document, the bond involved in Riguero? Your Honor, I can't confirm it because I don't have it. You don't remember now whether it's the Purgione is matched with Colella or Purgione is based on Riguero? I would love to. I'll do it in a supplemental letter. I don't have the record with me, that's why. But just so you know, that makes it very difficult for us to entertain the arguments because my understanding, and I think the shared understanding here is that they were based on the Riguero, the Riguero and Purgione documents were linked. And if one of the key considerations for us is to what extent there is overlap among and between these actions, we're sort of at a loss to discuss that with you if you don't know which ones overlap with which. So I think that makes it a little difficult for us. It's definitely in the letter, Your Honor. Well, I see it in Judge Preska's decision at SPA 110. Plaintiff's Riguero documents match the fraudulently submitted Purgione documents. That's at least a finding by the district court. Right. But at that point, Judge Brassai had already… No, no, no. Back to your law of the case argument, which just doesn't work. But there is a finding that the documents in Riguero match the document in Purgione. Okay. Even so, Your Honor, fair enough. You know what? I think – I know we've taken up your time to rebuttal out that question, but that was pretty much a fundamental question. So I think we're going to just say that we understand both parties' arguments. We thank you both for coming today, and we will take the case under advisement.